IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JONATHAN DEHART & DENISE DEHART, | : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 10-5869 (JBS/KMW) |
| Plaintiffs, | : | |
| v. | : | **OPINION** |
| US BANK, N.A. ND, et al. | : | |
| Defendants. | : | |

APPEARANCES:

Lewis G. Adler, Esq.
LAW OFFICE OF LEWIS ADLER
26 Newton Avenue
Woodbury, NJ 08096
     Counsel for Plaintiffs

Sheila Raftery Wiggins, Esq.
DUANE MORRIS, LLP
744 Broad Street
Suite 1200
Newark, NJ 07102
     Counsel for Defendant U.S. Bank, N.A. ND

Arthur N. Chagaris, Esq.
BEATTIE PADOVANO, LLC
50 Chestnut Ridge Road
P.O. Box 244
Montvale, NJ 07645
     Counsel for Defendant Foreclosure Management Company

Dashika R. Wellington, Esq.
WILENTZ, GOLDMAN & SPITZER, P.A.
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102
     Counsel for Defendant Udren Law Offices, PC

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This putative class action involving allegedly improper fees charged for mortgage reinstatement or payoff is before the Court on three motions to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Items 7, 8, & 9.]  Defendants seek dismissal of Plaintiffs' numerous state and federal claims.  This Opinion will address, <u>inter</u> <u>alia</u>, the New Jersey Entire Controversy Doctrine, the <u>Colorado River</u> abstention doctrine, the necessity of alleging damages in contractual causes of action, the New Jersey Consumer Fraud Act, the New Jersey Truth-in-Consumer Contract Warranty and Notice Act, and the Federal Debt Collection Practices Act.  The Court has addressed the many arguments raised by the parties, and will grant in part and deny in part the motions of Defendant Foreclosure Management Company and U.S. Bank, N.A. ND [Docket Items 8 & 9], but will deny in its entirety the motion of Udren Law Offices, PC [Docket Item 7] because the Court finds that Plaintiffs have stated a claim for recovery under the Fair Debt Collection Practices Act.


## II.  BACKGROUND

Plaintiffs in this action are Jonathan and Denise DeHart ("Plaintiffs"), and Defendants are U.S. Bank, N.A. ND ("U.S. Bank"), Foreclosure Management Company ("FMC"), and Udren Law

Offices, PC ("Udren").  The following facts are taken from the Complaint and the attached exhibits or from matters of public record and must be assumed true for purposes of these Rule 12(b)(6) motions.

On November 1, 2005, Plaintiffs executed a mortgage and note for the purchase of a residential property located at 188 S. Monmouth Court in Thorofare, New Jersey, originated by non-party Wilmington Finance in the amount of $260,000.  Compl. ¶ 11; Compl. Ex. A.  Less than four years later, Plaintiffs apparently fell behind on their mortgage payments, and the mortgage went into default on April 1, 2009.  Compl. ¶ 12.

On August 19, 2009, Defendant Udren sent Plaintiffs a notice of intention to foreclose, which stated that the mortgage was in default, and explained that Plaintiffs had a right to cure the default by paying the missed payments and late fees, in the amount of $19,625.13, up to 30 days later.  Compl. Ex. A.  In response, Plaintiffs requested statements documenting the amount necessary to reinstate the mortgage and the amount that would be necessary to pay off the mortgage in its entirety.[1]  On September

---

[1] This request by Plaintiffs was not attached to Plaintiffs' Complaint, but the Court infers the existence of this letter based on the fact that Exhibits B and C attached to the Complaint -- Defendants' subsequent September 10, 2009 letters -- begin with the phrase "as requested."  Compl. Exs. B & C.

10, 2009,[2] Plaintiffs received two separate notices from Udren: a reinstatement notice and a payoff notice, both stating that the notices were regarding "U.S. Bank Consumer Finance" loans. Compl. Exs. B & C.  Plaintiff alleges that these letters were sent "on behalf of USB [Defendant U.S. Bank]." Compl. ¶ 15.  The Complaint also alleges that Plaintiffs' mortgage was assigned to Defendant U.S. Bank eleven days later, on September 21, 2009. Compl. ¶ 14.  The September 10 payoff and reinstatement notices included the charges that Plaintiffs allege were excessive and/or misleading.

Specifically, the reinstatement and payoff notices each state an amount that, if payed after September 18, 2009, but prior to September 28, 2009, purportedly would either reinstate or pay off the mortgage and thereby prevent foreclosure.  Compl. Exs. B & C at 1.  The reinstatement amount was listed as $26,129.36 and the payoff amount was listed as $274,607.86.  Id. at 2.  Thus, the letters suggest that were Plaintiffs to attempt

---

[2] The Complaint reports the date of this letter as "September 10, 2010" but the Court understands Plaintiffs to mean that the letters were received in 2009 rather than 2010 for two reasons.  First, Plaintiff attached copies of the letters at issue, which prominently bear the date "September 10, 2009." Second, the Court notes that the Complaint itself was filed on September 9, 2010, which would have made the allegation of receiving the letters on September 10, 2010 impossible at the time it was alleged.  Thus, the Court deems the allegation of September 10, 2010 to be a typographical error.  Defendants note this error and suffered no prejudice as a result.  See, e.g., Udren Mot. to Dismiss at 2 n.2.

to reinstate or pay off their mortgage on September 19, 2009,
they would have been required to pay the additional fees listed
on the notices.  The total amounts listed were subdivided into
component charges in the form of payments or total principal owed
on the mortgage as well as late charges and other fees.  Id.
Both the reinstatement and payoff notices include five line items
marked as "anticipated" for charges related to court fees and
filing fees.  Id.  In addition, both notices also included a line
item marked "notice of intention - prepare and send" charged at
$100, and "attorney foreclosure fee" charged at $500.  Id.
Neither of these lines were marked "anticipated."

     The notices also included some caveats below the list of
charges and fees.  On the reinstatement notice, below the list of
fees are two notations of dates.  The notice states that

          THIS AMOUNT IS GOOD THRU 09/28/2009 **
          ** Please refer to the Notice of Intention
          letter for reinstatement amount prior to
          9/18/2009.

Compl. Ex. B at 2.  Similarly, below the list of fees on the
payoff notice is the notice that

          THIS AMOUNT IS GOOD THRU 9/28/2009 **
          ** Please note that if this loan is to payoff
          prior to the Notice of Intention letter
          expiring on 9/18/2009, the attorney fees and
          costs listed on this quote will become
          non-recoverable.

Compl. Ex. C at 2.  Additionally, immediately below the list of
charges and applicable dates on both letters is the note that

                              5

"ANY ITEM MARKED ANTICIPATED, IF NOT ACTUALLY EXPENDED, WILL BE REFUNDED TO MORTGAGOR IMMEDIATELY."  Compl. Exs. B & C at 2.

Plaintiffs allege that two charges included in the notices that were not marked as anticipated (for preparing the notice of intention and for the attorney foreclosure fee -- amounting to $600), were not permitted under New Jersey law, and therefore breached Plaintiff's mortgage contract and violated several state and federal statutes.  Plaintiffs claim that the New Jersey Fair Foreclosure Act ("FFA") of N.J. Stat. Ann. § 2A:50-57 prohibits the mortgagee from imposing court costs or fees related to a foreclosure proceeding prior to actually filing for foreclosure, citing to Spencer Savings Bank, SLA v. Shaw, 949 A.2d 218 (N.J. Super. App. Div. 2008).  Thus, because Defendants stated that fees and costs not marked "anticipated" would be charged immediately after the expiration of the 30-day notice of intent to foreclose period, and not necessarily after filing a foreclosure action, the letters were an attempt to collect fees before they were permitted to be collected under state law.

Plaintiffs allege that they never actually paid any of the allegedly illegal charges, nor were they able to cure the default.  Compl. ¶ 23.  On October 5, 2009, after Plaintiffs apparently took no action to reinstate or pay off the mortgage, Defendants filed a complaint for foreclosure in the Superior Court of New Jersey, Chancery Division.  Compl. ¶ 22; Udren Mot.

6

Dismiss. Ex. C.  <u>See</u> Docket No. F-052956-09 (N.J. Super. Ct. Ch.
Div.)  Plaintiffs Jonathan and Denise DeHart, defendants in the
state foreclosure action, have not contested the state
foreclosure action, and U.S. Bank eventually requested entry of
default on January 21, 2010.  Udren Mot. Dismiss. Ex. C.  U.S.
Bank moved for entry of final judgment on June 29, 2010, though
the chancery court has apparently not yet entered final judgment
in the foreclosure action.[3]  <u>Id.</u>

On September 9, 2010, Plaintiffs filed their Complaint in
this action in the Superior Court of New Jersey, Gloucester
County, seeking recovery on nine counts:

(1) (against U.S. Bank) breach of contract;

(2) (against U.S. Bank) breach of the duty of good faith and
fair dealing;

(3) (against U.S. Bank) violation of the New Jersey Fair
Foreclosure Act of N.J. Stat. Ann. § 2A:50-57(b)(3);

(4) (against U.S. Bank) violation of New Jersey State Court

---

[3] The Court notes that Defendants Udren and FMC state in
their briefs that final judgment was entered on May 3, 2010.
Udren Br. at 13; FMC Br. at 5.  However, both Defendants support
this factual proposition merely by citation to a May 3, 2010
notice from U.S. Bank to the DeHarts warning that U.S. Bank will
move for entry of final judgment in May of 2010.  Udren Mot.
Dismiss Ex. D.  Additionally, Defendant U.S. Bank states, in
contrast, that as of the filing of the present motion, final
judgment has not been entered in the state foreclosure action.
U.S. Bank Br. at 8.  Thus, for the purposes of this motion to
dismiss, the Court will assume that final judgment has not been
entered in the foreclosure action.

Rules 4:42-9(a)(4) and 4:42-10(a);

(5) (against U.S. Bank) violation of various New Jersey
statutes regarding excessive taxed costs;

(6) (against U.S. Bank and FMC) violation of the New Jersey
Consumer Fraud Act of N.J. Stat. Ann. § 56:8-2 et seq.;

(7) (against U.S. Bank) violation of the New Jersey Truth-
in-Consumer Contract, Warranty and Notice Act of N.J. Stat. Ann.
§ 56:12-1;

(8) (against U.S. Bank and FMC) violation of N.J. Stat. Ann.
§ 12A:9-210, a provision of the Uniform Commercial Code requiring
that an accurate statement of account be provided upon request;
and

(9) (against all three Defendants) violation of the Federal
Fair Debt Collection Practices Act ("FDCPA") of 15 U.S.C. § 1692
et seq.

On November 12, 2010, Defendant Foreclosure Management
Company removed the action to this Court. [Docket Item 1.]  All
three Defendants subsequently moved to dismiss the Complaint for
failure to state a claim under Fed. R. Civ. P. 12(b)(6).  [Docket
Items 7, 8 & 9.]  In addition to arguing that Plaintiffs'
Complaint fails to state a claim in any of its nine counts,
Defendants also argue that the action must be dismissed pursuant
to the New Jersey Entire Controversy Doctrine, and Defendant U.S.
Bank argues that the Court should abstain pursuant to the

<u>Colorado River</u> abstention doctrine.

## III.  DISCUSSION

### A.  Standard of Review

In order to give Defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct). <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1951 (2009).

In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The Third Circuit Court of Appeals instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim upon which relief may be granted. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-211 (3d Cir. 2009) (citations omitted).  The analysis should be conducted

as follows:

> (1) the Court should separate the factual and
> legal elements of a claim, and the Court must
> accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal
> conclusions; and (2) the Court must then
> determine whether the facts alleged in the
> complaint are sufficient to show that the
> plaintiff has a plausible claim for relief, so
> the complaint must contain allegations beyond
> plaintiff's entitlement to relief.    A
> plaintiff shows entitlement by using the facts
> in his complaint.

Id.

**B. Analysis**

    1. <u>Preclusion and Abstention</u>

The Court will first address the two arguments put forward by Defendants that the Court should not or can not hear the case in its entirety.

    a. Entire Controversy Doctrine

All three Defendants argue that the present action is barred by the New Jersey Entire Controversy Doctrine.  The Entire Controversy Doctrine, codified in Rule 4:30A of the New Jersey Court Rules, is a New Jersey state law doctrine that is an "idiosyncratic" form of claim preclusion with a slightly broader scope, but the same basic elements as traditional claim preclusion.  <u>See generally</u> <u>Rycoline Products, Inc. v. C & W Unlimited</u>, 109 F.3d 883 (3d Cir. 1997).  The Doctrine is applicable in federal court by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738.  <u>Rycoline</u> at 887.  Additionally,

10

the Doctrine is applicable in the foreclosure context.  See In re Mullarkey, 563 F.3d 215, 228 (3d Cir. 2008); N.J. Court Rule 4:64-5.

Defendants argue that Plaintiffs' action is barred by the Entire Controversy Doctrine because all of Plaintiff's claims could have been brought as defenses or counter-claims in the first-filed state foreclosure action.  Plaintiffs respond that the Entire Controversy Doctrine is not applicable because Plaintiffs' claims are not "germane" to the state foreclosure action, citing Jackson v. Midland Funding, LLC, 754 F. Supp. 2d 711, 714 (D.N.J. 2010).

The Court, however, finds that the Entire Controversy Doctrine is inapplicable in this case for a more fundamental reason.  Specifically, there is no evidence in the record before this Court demonstrating that final judgment has been entered in the first-filed state foreclosure action.  The Third Circuit has held that, as a species of res judicata, the Entire Controversy Doctrine is inapplicable prior to entry of final judgment in the first-filed action.  Rycoline at 889 ("we hold that the Entire Controversy Doctrine does not preclude the initiation of a second litigation before the first action has been concluded.").  See also Youssef v. Department of Health & Senior Svcs., Slip Op. 2011 WL 1444226 at *2 (3d Cir. Apr. 15, 2011) (reversing dismissal based on the Entire Controversy Doctrine because "as a

11

variant of <u>res judicata</u>, [the Entire Controversy Doctrine]
requires the existence of a prior judgment that is final, valid,
and on the merits") (internal quotations omitted).  If the New
Jersey chancery court has not entered final judgment in the
foreclosure action, then there is no prior judgment.  Thus,
because there is no evidence of a prior final judgment on the
merits in Plaintiffs' underlying foreclosure action, the Court
must deny the application of the Entire Controversy Doctrine
here.[4]

       b.  <u>Colorado River</u> abstention

       In addition to the Entire Controversy Doctrine, Defendant
U.S. Bank argues that the Court should abstain from exercising
jurisdiction in this matter pursuant to the <u>Colorado River</u>
abstention doctrine.  The <u>Colorado River</u> abstention doctrine,
named after the Supreme Court case of <u>Colorado River Conservation</u>
<u>District v. United States</u>, 424 U.S. 800 (1976), exists for the
rare circumstance where a federal court runs the risk of entering

_____

       [4] The Court notes that the Third Circuit has not yet
addressed whether the Entire Controversy Doctrine could apply
<u>after</u> the final judgment has been entered in an action that was
initially filed while the first action was still pending.  <u>See</u>
<u>Rycoline</u> at 889 n.2 ("We do not reach the additional question of
whether, where two actions are pending simultaneously, the Entire
Controversy Doctrine may be raised at the time one action is
concluded to preclude completely the other action."); <u>Youssef</u> at
*2 (same).  Because final judgment has not yet been entered in
the state court foreclosure action here, however, the issue is
not currently before the Court, and it will therefore not address
it at this time.

a judgment that could conflict or interfere with a parallel state court judgment.  See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp, 460 U.S. 1, 15-16 (1983).  However, for a district court to abstain under this doctrine, the circumstances must be truly exceptional because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817 (internal quotations omitted).

The threshold requirement for application of the abstention doctrine is that the two actions must be "truly duplicative", or abstention will not be warranted.  Trent v. Dial Medical of Florida, Inc., 33 F.3d 217, 223 (3d Cir. 1994) (superseded by statute on other grounds).  Cases are sufficiently parallel usually only when they involve the same parties and claims.  Id. Thus, "when a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify Colorado River abstention."  Id. at 224.

In the present case, the Court finds that the actions are not parallel.  The state foreclosure action involves U.S. Bank seeking a judgment of foreclosure on property subject to a mortgage.  The federal action, by contrast, seeks only damages for various debt collection practices but does not seek to invalidate the foreclosure proceeding.  Unlike in St. Clair v. Wertzberger, 637 F. Supp. 2d 251 (D.N.J. 2009), the Plaintiffs in

13

federal court here are not asserting the FDCPA as a defense to
the foreclosure proceeding.  Therefore, even if Plaintiffs
prevail on their damages claims in this Court while U.S. Bank
succeeds in obtaining a judgment of foreclosure in the state
court, the two judgments would not necessarily be inconsistent or
conflict with each other.  Thus, the Court will not abstain from
exercising jurisdiction under the Colorado River doctrine.

   2. Agency and Vicarious Liability

  As the Court has determined that neither the Entire
Controversy Doctrine nor the Colorado River doctrine apply in
this case, it must turn to assessing whether Plaintiffs have
sufficiently alleged any claims for relief sufficient to survive
Defendants' Rule 12(b)(6) motion.  The Court will begin by
addressing the argument put forward by Defendant U.S. Bank
regarding vicarious liability, and then proceed through assessing
whether each of Plaintiffs' claims survives.

  Defendant U.S. Bank argues that Plaintiffs do not allege
sufficient facts to assert any claims against it on the basis of
a theory of vicarious liability.  U.S. Bank argues that
Plaintiffs' claims all stem from the two September 10, 2009
letters which were sent by Defendant Udren, and that Plaintiff
additionally alleges that the mortgage was not assigned to U.S.
Bank until eleven days later on September 21, 2009.  Compl. ¶ 14.
Thus, U.S. Bank concludes, Plaintiffs have not shown an

entitlement to relief against U.S. Bank because they have not
alleged that U.S. Bank took any direct action toward Plaintiffs
or that U.S. Bank directed the conduct of Udren in drafting the
letters or sending them to Plaintiffs.

In general, a plaintiff alleging liability on the basis of
respondeat superior must ultimately prove (and therefore has the
burden of alleging) "(1) that a master-servant relationship
existed and (2) that the tortious act of the servant occurred
within the scope of that employment." Wiatt v. Winston & Strawn,
LLP, Civ. No. 10-6608, 2011 WL 2559567, at *8 (D.N.J. June 27,
2011) (quoting Carter v. Reynolds, 815 A.2d 460, 463 (N.J.
2003)).

The Court concludes, based on all of the allegations in the
Complaint and its attached exhibits, that for purposes of
surviving a Rule 12(b)(6) motion, Plaintiffs have sufficiently
alleged both the existence of a master-servant relationship and
that the acts of Udren complained of by Plaintiffs occurred
within the scope of that employment.  First, Plaintiffs allege
that the September 10 notices were sent from Udren "on behalf of
USB."  Second, the attached letters themselves both begin with
the remark "RE: US Bank Consumer Finance Loan" and bear the note
"the above cure amount must be made by ***CASHIER'S CHECK,
CERTIFIED CHECK OR MONEY ORDER payable to US Bank Consumer
Finance."  Compl. Ex. B at 1.

The Court finds that it is a reasonable inference from these allegations that Defendant Udren was in an agency relationship with U.S. Bank at the time the letters were written and that sending the letters to Plaintiffs was within the scope of that relationship.  There is no other reasonable explanation why Udren would demand that any reinstatement or payoff check be made out to U.S. Bank other than that Udren was acting at the behest of U.S. Bank to collect such checks.  See Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp.2d 389, 399-400 (D.N.J. 2009) (holding that, on nearly identical allegations of agency, defendant bank "cannot escape liability for conduct of their alleged agent").

That Plaintiff additionally alleged that the mortgage was not officially assigned to U.S. Bank until shortly after the date of the letters is not necessarily inconsistent with this allegation as Plaintiffs clearly allege that U.S. Bank directed the sending of the letters to Plaintiffs, which could have been done in anticipation of the assignment of the mortgage.  For purposes of the present motion, the allegation that Udren acted as an agent of U.S. Bank is plausible.  Thus, the Court will not dismiss Plaintiffs' claims against U.S. Bank on the basis of a failure to sufficiently allege an agency relationship.  Should facts be uncovered in discovery that demonstrate the absence of such an agency relationship, nothing in this Opinion prevents Defendants U.S. Bank (or FMC, who do not raise this argument

16

here) from raising the issue in a motion for summary judgment.

      3.  <u>Counts I through VI</u>

The first six counts of the Complaint seek to recover damages on a variety of theories, from breach of express contract to violation of the NJCFA.  The Court will grant Defendants' motions to dismiss with regard to these six claims because all of them require Plaintiffs to have suffered damages or an ascertainable loss, which Plaintiffs have not alleged.  Indeed, as recounted above, Plaintiffs expressly allege that they "have made no payments on the illegal charges. . . ."  Compl. ¶ 23.  As will be explained below, this failure to allege damages or any ascertainable loss is fatal to the first six counts of Plaintiffs' Complaint.

      a.  Contract claim

Count I of the Complaint alleges that U.S. Bank breached Plaintiffs' note and mortgage contracts by demanding amounts not due under either the contracts or applicable law.  Defendant U.S. Bank argues that this count must be dismissed because, first, Plaintiffs have not alleged a specific duty under any contract that was breached.  Second, Plaintiffs fail to allege that they suffered any damages as a result of this alleged breach of contract.  The Court agrees with Defendant.  A party claiming breach of contract has the burden of alleging and, ultimately, proving all elements of its cause of action, including breach and

damages.  <u>Video Pipeline Inc. v. Buena Vista Home Entm't, Inc.</u>, 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (holding that New Jersey contract law requires proof that "(1) a valid contract existed between plaintiff and defendant; (2) plaintiff breached the contract; (3) defendant performed its obligations under the contract; and (4) defendant was damaged as a result of the breach").  <u>See also</u>, <u>Coyle v. Englander's</u>, 488 A.2d 1083, 1088 (N.J. Super. App. Div. 1985) (listing essential elements of breach of contract claim as "a valid contract, defective performance by the defendant, and resulting damages.").  Defendant argues that Plaintiffs have not pointed to any portion of a contract that was breached, but merely alleged, in conclusory fashion, that "USB has breached their contracts with the plaintiffs and members of the class" because it "imposed or collected amounts that are not due and owing by contract or applicable law." Compl. ¶¶ 27-28.  Secondly, Defendant argues that, as Plaintiffs have alleged that they did not pay any of the fees listed in the September 10 notices, Plaintiffs have alleged no damages.

Plaintiffs respond to Defendant's argument regarding breach by stating simply that "the fact that the Defendant overcharged the Plaintiffs is a breach of the contract" without pointing to any provision in the contract that limits the fees that Defendant can collect from Plaintiffs.  The Court therefore finds that

Plaintiffs' breach of contract claim fails for failing to meet the notice pleading standards of Rule 8, Fed. R. Civ. P.

Plaintiffs respond to Defendant's damages argument by citing to the New Jersey statute governing fraud in the execution of a contract, N.J. Stat. Ann § 2A:32-1, for the proposition that Plaintiffs need not allege that they suffered any damages on a breach of contract claim.  The Court finds that this statutory provision is not applicable to Plaintiffs' claim for breach of contract, which arises under New Jersey's interpretation of common law.  Therefore, Plaintiff's breach of contract claim will be dismissed.

b.  Duty of good faith and fair dealing

Plaintiffs' second claim is for damages resulting from Defendant U.S. Bank's alleged breach of the duty of good faith and fair dealing.  Plaintiffs allege that Defendant breached the duty of good faith and fair dealing as codified in the Uniform Commercial Code, N.J. Stat. Ann. § 12A:1-203, by attempting to collect fees to which it was not entitled under New Jersey law or contract and that Plaintiffs consequently "have been damaged". Compl. ¶ 33.

Defendant responds, again, with multiple reasons why Plaintiffs' count fails to state a claim.  First, Defendant argues that the New Jersey statutory duty of good faith and fair dealing cited by Plaintiffs does not provide a private right of

action.  Secondly, Defendant argues that Plaintiffs have not alleged any specific duty that was breached.  Finally, Defendant argues that Plaintiffs fail to state a claim because they have not sufficiently alleged that they suffered any damages (by virtue of their allegation that they have not paid any of the allegedly improper fees).

Plaintiffs do not respond to the argument regarding the lack of a private right of action under the statutory duty cited in the Complaint.  The Court therefore grants Defendant's motion to dismiss on this basis as uncontested.

With regard to Defendant's damages argument, the Court likewise agrees with Defendant.  Damage is an element of the claim which Plaintiff must allege to survive Defendant's motion to dismiss.  Wade v. Kessler Institute, 778 A.2d 580, 590 (N.J. Super. App. Div. 2001) (holding that plaintiff must prove elements of breach, proximate cause, and damages to recover under the implied covenant of good faith and fair dealing).

Plaintiffs' opposition brief does not clarify the matter by pointing to some allegation of specific damage for this breach in their Complaint.  Instead, Plaintiffs oppose this argument by claiming that they are not required to allege damages to survive a Defendant's motion to dismiss, citing to Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 366 (D.N.J. 2006). The Barrows court denied a Rule 12(b)(1) motion to dismiss for

20

lack of standing on a similar claim of breach of the implied duty
of good faith and fair dealing.  <u>Id.</u>  ("Plaintiff's contention
that Defendants had a duty to insure the propriety of any attempt
to collect attorneys fees negates Defendants' argument that
Plaintiff needed to have actually paid such fees.")  The Court
interprets Plaintiffs' argument to mean that if the plaintiff in
<u>Barrows</u> had sufficiently alleged injury-in-fact to satisfy the
requirements of standing, then Plaintiffs here must have also
sufficiently alleged damages to survive a Rule 12(b)(6) motion.

The Court rejects this argument.  While the <u>Barrows</u> court
may have found that injury-in-fact was alleged on the different
facts present in that case, the court did not address the issue
of what allegations would be sufficient to plead damages.
Indeed, the <u>Barrows</u> court expressly reserved judgment on the
issue of whether the plaintiff's claim could survive a motion to
dismiss on 12(b)(6) grounds.  <u>Id.</u> ("The Court issues no opinion
on whether that claim will survive a motion to dismiss by
Chase").  Thus, in the instant matter, this Court finds no
reasoning in <u>Barrows</u> to persuade it to disregard the basic
requirement that a plaintiff claiming breach of the duty of good
faith and fair dealing must allege that such a breach has damaged
him or her to survive a motion to dismiss.  The Court must
therefore grant Defendant's motion to dismiss Plaintiffs' second
count.

c.   Counts III, IV and V

Plaintiffs' third, fourth and fifth counts allege violations of, respectively: the New Jersey Fair Foreclosure Act ("FFA") of N.J. Stat. Ann. § 2A:50-57(b)(3); New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a); and excessive taxed costs in violation of three New Jersey statutes §§ 2A:15-13, 22A:2-8, and 22A:2-10. Defendant U.S. Bank argues that all three of these claims should be dismissed because none provides a private right of action. This Court has concluded in another action that the FFA and Court Rules provide no private right of action. <u>Rickenbach</u>, 635 F. Supp. 2d at 399-400. Plaintiffs' only opposition to these arguments is that violations of these provisions are actionable through the New Jersey Consumer Fraud Act. Thus, the Court concludes that, to the extent Plaintiffs seek recovery for violations of these provisions, it is only as a standard of conduct to be redressed through the NJCFA, as discussed next. Consequently, the Court will dismiss Counts III, IV and V.

d.   New Jersey Consumer Fraud Act

Plaintiffs' Count VI alleges violation of the New Jersey Consumer Fraud Act. Plaintiffs claim that both Defendants U.S. Bank and FMC committed unconscionable business practices in violation of the NJCFA which resulted in an ascertainable loss in the amount of $600.

Both Defendants argue that Plaintiffs' claims under the

22

NJCFA must be dismissed because Plaintiffs have not sufficiently alleged that they suffered an ascertainable loss.  To state a claim under the NJCFA, a private plaintiff must allege (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.  See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462-465 (N.J. 1994).

Defendants argue that, due to Plaintiffs' allegation that they have not paid any of the allegedly improper fees requested by Defendants, they cannot maintain a claim under the NJCFA. Defendants note that very similar NJCFA claims have been dismissed in this District on this basis in the past.  See e.g., Skypala v. Mortgage Elec. Registration Sys., Inc., 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (dismissing claim of NJCFA violation because, inter alia, plaintiff failed to adequately allege ascertainable loss and "[a]t no point in the Complaint does Plaintiff allege that he actually paid the fees discussed".). See also Barrows, 465 F. Supp. 2d 347, 361 ("because Plaintiff did not pay any attorneys' fees or costs, she has not sustained any ascertainable loss.").

Plaintiffs oppose Defendants' arguments regarding ascertainable loss by claiming that they are not required to plead that they actually paid any money in order to allege

ascertainable loss under the NJCFA.  Plaintiffs attempt to
support this proposition by citing to Cox v. Sears Roebuck & Co.
647 A.2d 454 (N.J. 1994).  Plaintiffs characterize the holding of
Cox as stating that "[t]he law requires that the loss be
quantifiable to be an ascertainable loss.  The law does not
require the consumer to have paid the false debt."  Pls.' Br. in
Opposition to U.S. Bank's Mot. Dismiss at 21.  The Court finds no
support for this proposition in either Cox or in logic itself.

    The Court finds that Plaintiffs' characterization of the
holding in Cox is inaccurate.  In Cox, a plaintiff sued a
contractor for making faulty repairs to plaintiff's home, for
which plaintiff did not fully pay.  647 A.2d at 457.  The New
Jersey Supreme Court found that plaintiff had proven an
ascertainable loss that could be measured according to the amount
the jury had found he would be required to pay to fix the faulty
repairs.  Id. at 465.  In other words, the court found that the
plaintiff had actually suffered an economic loss to his property
in an amount that could be measured, even if it was not
necessarily measured according to the original contract price
which Plaintiff did not pay.  Thus, it is incorrect for
Plaintiffs to claim that Cox holds that they need not allege that
they have suffered any monetary loss.

    By contract to the Cox plaintiff, the Deharts in the instant
case have not suffered any monetary loss at all.  At most,

Plaintiffs seem to suggest that the demand for allegedly improper fees and costs was itself a loss that is recoverable under the NJCFA.  It is well established that damages for emotional distress alone are not recoverable as an ascertainable loss under the NJCFA.  See Cole v. Laughrey Funeral Home, 869 A.2d 457, 463 (N.J. Super. App. Div. 2005).  Thus, the Court first finds that Plaintiffs have not suffered an ascertainable loss under the NJCFA if they have not paid for anything and have not alleged that they will be obligated to pay anything improper in the future.  As Plaintiffs readily admit that they have not paid the $600 they allege Defendants have wrongfully charged, they have not stated a claim for relief under the NJCFA.  Consequently, Count VI will be dismissed.

    4. <u>Truth-in-Consumer Contract, Warranty and Notice Act</u>

  Count VII of the Complaint alleges that Defendant U.S. Bank violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") codified at N.J. Stat. Ann. § 56:12-1 <u>et seq</u>.  Plaintiffs allege that the September 10, 2009 reinstatement and payoff notices sent on Defendant's behalf included excessive fees and costs of at least $600, in violation of the TCCWNA.

  The relevant portion of the TCCWNA provides that

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision

25

> that violates any clearly established legal
> right of a consumer . . . as established by
> State or Federal law at the time the offer is
> made or the consumer contract is signed or the
> warranty, notice or sign is given or
> displayed.

N.J. Stat. Ann § 56:12-15.  A defendant who violates the TCCWNA

can liable for a $100 civil penalty or for plaintiff's actual

damages. N.J. Stat. Ann. § 56:12-17.

Defendant argues that Plaintiffs' claim under the TCCWNA

should be dismissed for several reasons.  First, Defendant argues

that Plaintiffs' claim fails because the September 10 letters do

not qualify as consumer contracts under the statute.  Second,

Defendant argues that Plaintiffs did not qualify as "consumers"

when they received the letters.  Finally, Defendant argues that

the content of the letters does not violate the statute because

the charges did not violate a clearly established right of

Plaintiffs at the time they were received.[5]

---

[5] Defendant also argues that Plaintiffs' claim under the
TCCWNA should be dismissed as impermissibly vague under Rule
8(a), Fed. R. Civ. P., for not stating which specific provision
of the TCCWNA Defendant's conduct allegedly violated.
Plaintiffs' response muddies the issue further by claiming,
confusingly, that "Plaintiffs have a cause of action under NJSA
56:12-14 which prohibits the inclusion of a clause which waives
the Plaintiff's right."  As Defendant points out in reply,
Plaintiffs appear to have intended to refer to § 56:12-16, which
provides in part that "No consumer contract, warranty, notice or
sign, as provided for in this act, shall contain any provision by
which the consumer waives his rights under this act."  The Court
does not understand what this provision has to do with
Plaintiffs' claim that the September 10 letters, by charging
allegedly excessive fees and costs, violated the statute.
However, the Court finds the Complaint sufficiently clearly

With regard to Defendant's first argument, Plaintiffs oppose dismissal by insisting that the letters need not qualify as a consumer contract because they qualify as "notices" under the statute.  The TCCWNA is violated when a defendant ("seller, lessor, creditor, lender or bailee") offers or enters into a written consumer contract or gives or displays "any written consumer warranty, notice or sign" that violates the statute's provisions.  § 56:12-15.  Thus, Defendant's insistence that the claim be dismissed because the letters are not contracts is an incorrect reading of the statute.  New Jersey Courts have found the statute applies to more than merely contracts, but also to warranties, notices or signs.  See Smith v. Vanguard Dealer Svcs., L.L.C., 2010 WL 5376316 at *2 (N.J. Super. App. Div. Dec. 21, 2010) (construing TCCWNA to apply to the display of a warranty).

Defendant offers no argument that the letters do not fall within the meaning of "notices" as intended by the statute, and the Court will not supply any sua sponte.  Thus, because a plain reading of the statute demonstrates that the statute contemplates claims based on notices as well as contracts, the Court will not

---

identifies the claim and the legal remedy sought as to satisfy the notice pleading requirements of Rule 8(a), especially as Defendant clearly identified § 56:12-15 as the relevant provision to Plaintiffs' claim.  As the Court will dismiss this claim for other reasons, explained below, the Court need not dismiss the claim as failing to give Defendant notice of the claim, despite the incoherence of Plaintiffs' response.

dismiss the claim on this basis.

However, Plaintiffs do not respond to Defendant's other two arguments: that Plaintiffs are not "consumers" under the statute, and that the charges in the letters did not violate Plaintiffs' rights at the time they were sent.  Defendant contends that to state a claim under the TCCWNA, Plaintiffs must be "consumers" as defined under the statute, and that the notice must violate a clearly established right at the time it was sent.  Defendant argues that Plaintiffs do not allege that they were consumers when they were sent the September 10 notices.  A consumer is defined in the statute as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes."  Defendant argues that, because the September 10 notices were offered only to provide current and potential future charges of reinstating and paying off the mortgage, they were not offered to "consumers" within the meaning of the statute.

Additionally, Defendant argues that the September 10 notices both clearly state that, for reinstatement and payoff balance prior to September 18, 2009, no attorney fees or costs would be charged, and Plaintiffs should refer to the notice of intent to foreclose for appropriate balances.  Thus, Defendant argues, to the extent that Plaintiff claims the fees and costs charged in the September 10 notices were excessive in violation of a clearly

28

established right, they were expressly not excessive at the time they were sent and received, prior to September 18.

The Court agrees with Defendant to the extent that to state a claim under the TCCWNA, Plaintiffs must allege that they were consumers and that the notices violated clearly established rights at the time they were sent.  While potentially meritorious arguments may exist to overcome Defendant's arguments to dismiss on these grounds, the Court will not fill in opposition on an issue that is not opposed by a party who is represented by counsel.  Consequently, the Court will dismiss Count VII without prejudice to refiling an amended complaint that cures these pleading failures.

     5.  <u>Statement of Account per N.J. Stat. Ann § 12A:9-210</u>

Plaintiff's eighth count concerns the codification of a portion of the Uniform Commercial Code governing secured transactions.  Specifically, N.J. Stat. Ann. § 12A:9-210 states that a debtor such as Plaintiffs can make a "request regarding a statement of account," meaning that the secured party on the debt, such as Defendant U.S. Bank, must "approve or correct a statement indicating what the debtor believes to be the aggregate amount of unpaid obligations secured by collateral as of a specified date. . ."  N.J. Stat. Ann. § 12A:9-210(a)(4).  A defendant who violates this provision can liable for $500 in statutory damages.  N.J. Stat. Ann. § 12A:9-625(f).

Plaintiffs allege that the September 10, 2009 reinstatement and payoff notices were an "inaccurate account for the payoff and reinstatement of their mortgage."  Compl. ¶ 62.

The parties do not cite any legal authority interpreting this provision of the statute, and the Court can find none in its own research.  Thus, the Court will be limited in its interpretation of the statute to its understanding of the plain meaning of the statute's language.  See N. J. Stat. Ann. § 1:1-1 ("In the construction of the laws and statutes of this state ... words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.")

Defendants FMC and U.S. Bank move to dismiss this claim on multiple grounds.  FMC moves to dismiss on the ground that it is not the secured party, and that the statute therefore does not apply to it.  Plaintiff consents to dismissal of the claim against FMC on this basis, so the Court will grant FMC's motion on this Count.

Defendant U.S. Bank moves to dismiss for three reasons. First, U.S. Bank argues that Plaintiffs do not allege that their request for payoff and reinstatement information constituted a "request regarding a statement of account" as defined in § 12A:9-

210(a)(4).  Second, U.S. Bank argues that, even if such a request
were to be construed as a § 12A:9-210(a)(4) request, the
September 10, 2009 reinstatement and payoff notices were accurate
at the time they were sent and received, because they explicitly
stated that the fees and costs were not payable until at least
September 18, 2009.  Finally, Defendant argues that § 12A:9-210
only governs a statement of principal and interest owed, but does
not govern any statement of additional fees.

Plaintiffs respond in opposition only to the last of these
three arguments.  The Court agrees with Plaintiffs that the
statute, which requires a statement of the "aggregate amount of
unpaid obligations secured by collateral," includes statements of
fees or costs which may be added to the principal and interest
for complete payoff or reinstatement.

However, Plaintiffs do not respond to Defendant's argument
regarding their failure to allege that they sent a "request
regarding a statement of account" as defined under the statute.
This omission is fatal to Plaintiffs' claim.  The statute, by its
own terms, only obligates a secured party to approve or correct a
statement made by the debtor of the debtor's understanding of his
or her obligations.  The statute does not appear to cover, for
example, a statement of account provided by the secured party
sent at the debtor's request for a simple balance-due statement.
Thus, unless Plaintiffs allege that they sent to Defendant "a

statement indicating what the debtor believes to be the aggregate
amount of unpaid obligations," the statute is not implicated.

In the present case, Plaintiffs allege only that they
received an inaccurate account of the payoff and reinstatement
notices.  They do not allege what they sent to Defendant to
request this statement, nor do they attach to the Complaint a
copy of their request.  They have attached copies of the
September 10, 2009 letters, which begin only with the phrase "As
requested."  Compl. Exs. B & C.  This is not enough to allege
that the request was a "request regarding a statement of account"
as defined in § 12a:9-210(a)(4).  Therefore, the Court will
dismiss Count VIII without prejudice.

### 6.  The Fair Debt Collection Practices Act

Plaintiffs' final count is that all three defendants
violated the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. §§ 1692e and 1692f.  Defendant Udren moves to dismiss this
count on the ground that the September 10, 2009 letters were, as
a matter of law, not misleading and did not take or threaten to
take any action not allowed by law.  Defendants FMC and U.S. Bank
join in Udren's motion on this basis and Defendant U.S. Bank
similarly argues that the letters were accurate at the time they
were sent.  In addition, Defendant U.S. Bank moves to dismiss the
claim on three other separate grounds: (1) it was not a debt
collector within the definition of that term under the FDCPA on

32

September 10, 2009; (2) U.S. Bank did not communicate with Plaintiffs directly; and (3) Plaintiffs themselves initiated the contact with U.S. Bank.  Because the Court finds that Plaintiffs have sufficiently alleged a violation of the FDCPA in this case, the Court will deny Defendants' motions to dismiss this final count.

Plaintiffs claim that the September 10, 2009 letters stated that after September 18, 2009, without regard to the filing of any foreclosure action, attorney fees and costs in the amount of $600 would become due and would be required to be paid by Plaintiffs in order to reinstate or pay off their mortgage. Plaintiffs further claim that such fees and costs are, under the NJ FFA, not recoverable until <u>after</u> a foreclosure action has been filed, citing to <u>Spencer Savings Bank, SLA v. Shaw</u>, 949 A.2d 218 (N.J. Super. App. Div. 2008).  Thus, Plaintiffs claim, Defendants' letters constituted: (1) the false representation of the amount of debt Plaintiffs owed as of September 19, 2009, in violation of 15 U.S.C. § 1692e(2)(A); (2) the false representation of compensation which may be lawfully received as of September 19, 2009, in violation of § 1692e(2)(B); and (3) an effort to collect an amount not permitted under agreement or by law in violation of § 1692f(1).

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such

33

practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, --- U.S. ---, 130 S. Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)).  The Act creates a private cause of action to recover for violations of the Act actual damages as well as statutory damages up to $1,000 for individual actions as well as costs and reasonable attorney's fees.  § 1692k(a).  The Act also sets statutory limits on class actions in the amount of the lesser of either $500,000 or 1% of the violating debt collector's net worth.  § 1692k(a)(2).

The Third Circuit instructs that, in light of the remedial nature of the FDCPA, courts are to construe its language broadly so as to effect its purpose.  Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006).  Thus, the Court applies a "least-sophisticated debtor" standard when analyzing claims of misleading communications, which is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.  This standard is consistent with the norms that courts have traditionally applied in consumer-protection law."  Id. (internal quotations omitted).  However, application of the "least-sophisticated debtor" standard does not require the Court to credit unreasonable interpretations.  "[W]e note that although the 'least sophisticated debtor' standard is a low standard, it 'prevents liability for bizarre or idiosyncratic interpretations

of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'"  Lesher v. Law Offices Of Mitchell N. Kay, PC, --- F.3d ---, 2011 WL 2450964 at *3 (3d Cir. June 21, 2011). With this standard in mind, the Court finds that Plaintiffs in the instant case have alleged that Defendants' statements were sufficiently misleading as to survive Defendants' motions to dismiss.

Defendants argue that the September 10, 2009 letters were not, as a matter of law, misleading and could not reasonably be interpreted as attempts to collect amounts not permitted by law. Defendants point out that the letters all clearly indicate that the fees and costs listed in the September 10 letters would not be recoverable until after September 18, as was stated in the August 19, 2009 notice of intent to foreclose.  Further, Defendants argue, they were authorized to charge attorney fees and costs once foreclosure proceedings were initiated, which in fact took place promptly thereafter, on October 5, 2009.

The Court finds, however, that under the least-sophisticated debtor standard, a reasonable unsophisticated debtor could interpret these letters to state that if Plaintiffs were to attempt to reinstate or pay off their mortgage on September 19, 2009, they would have been required to pay the $100 notice of intention fee and the $500 attorney foreclosure fee, which were

debts Defendants were prohibited from collecting or demanding at that time under state law.  The Court finds this allegation to be sufficient to state a claim for a violation of both § 1692e(2) as well as § 1692f(1).  Defendants' arguments that Plaintiffs cannot recover because they did not, in fact, attempt to pay these amounts, nor allege that these additional charges were the reason they failed to reinstate or pay off the mortgage are irrelevant; the statute permits recovery of statutory damages even without a showing of actual damages.  § 1692k.  Thus, the Court will deny Defendants' Udren and FMC's motions to dismiss this count.

Defendant U.S. Bank makes three additional arguments for dismissal of this count.  First, Defendant argues that it was not a debt collector within the definition of that term under the FDCPA on September 10, 2009.  Defendant argues that, according to the facts alleged in the Complaint, Defendant U.S. Bank was not assigned the mortgage until September 21, 2009, after the September 10 letters were sent.  Therefore, Defendant argues, Plaintiff has not alleged sufficient facts to establish that U.S. Bank was a debt collector of these debts at the time the letters were sent.  The Court has already held that Plaintiffs have sufficiently alleged the existence of an agency relationship between Defendants Udren and U.S. Bank to establish a theory of vicarious liability on the part of U.S. Bank for its agent's actions.  See, supra, section III.B.2.  Additionally, the Third

Circuit has held that the principal of an agent that is acting as a debt collector can be vicariously liable for the agent's violations of the FDCPA if the principal is itself a debt collector.  <u>Pollice v. National Tax Funding, L.P.</u>, 225 F.3d 379, 404 (3d Cir. 2000).  Thus, the only question before the Court is whether U.S. Bank was acting as a "debt collector" as that term is defined under the statute at the time it engaged Udren to attempt to collect Plaintiffs' debts.

The FDCPA defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Additionally, an assignee of a debt "may be deemed a 'debt collector' if the obligation is already in default when it is assigned."  <u>Pollice</u>, 225 F.3d at 403. Plaintiffs have alleged that their mortgage was in default as early as April of 2009.  Thus, the Court finds that Plaintiffs have sufficiently alleged that Defendant U.S. Bank was acting as a debt collector when its agent sent the September 10, 2009 letters to Plaintiffs.  If on September 10, 2009, U.S. Bank was not yet the assignee of the debt, then it was acting to collect the debt of another, and it therefore fits within the definition of § 1692a(6).  If it was attempting to collect the debt in

37

anticipation of the assignment, after which it would clearly have
become a debt collector pursuant to Pollice, it would surely have
been a debt collector prior to such assignment.  Consequently,
the Court will deny Defendant U.S. Bank's first argument for
dismissal.

Secondly, Defendant U.S. Bank argues that it escapes
liability because it did not communicate with Plaintiffs
directly.  The Court has already found that Defendant can be held
vicariously liable for its agent's actions, and will therefore
deny this second argument.

Third, Defendant U.S. Bank argues that it escapes liability
under the FDCPA because Plaintiffs themselves initiated the
contact with U.S. Bank.  On this point the Court again agrees
with Plaintiffs that the facts as alleged in the Complaint do not
support Defendant's argument.  Defendant cites to Gorham-DiMaggio
v. Countrywide Home Loans, Inc., Civ. No. 05-0583, 2005 WL
2098068 at *2 (N.D.N.Y. Aug. 30, 2005) for the proposition that
communication that was initiated by the debtor is not actionable
under the FDCPA.

The Court finds that, to the extent that Gorham-DiMaggio is
persuasive authority, it is factually inapplicable here.  As
Plaintiff's attachments demonstrate, the initial contact with
Plaintiffs came from the debt collector Udren in the form of a
notice of intention to foreclose.  Compl. Ex. A.  In response to

38

that notice, Plaintiffs requested additional payoff and
reinstatement information, which Udren, acting as Defendant U.S.
Bank's agent, sent on September 10, 2009.  Compl. Exs. B & C.  As
the court in Gorham-DiMaggio explained, "the purpose of § 1692 is
to ensure that communications initiated by the debt collector
(not the consumer) are not abusive, deceptive, or unfair."  Id.
(emphasis added).  In the present case, it is clear that the
communications in this matter were initiated by the debt
collector Udren here.  Thus, the Court will deny Defendant U.S.
Bank's motion to dismiss Plaintiff's FDCPA claim.

       7.  Class action allegations

     Finally, Defendant Udren additionally seeks to dismiss
Plaintiffs' class action allegations on the grounds that they
have not sufficiently alleged that they are members of any
potential class because they have not sufficiently stated a claim
for recovery under any asserted theory.  As the Court has now
concluded that Plaintiffs have sufficiently stated a claim under
the FDCPA, the Court will deny Defendant's motion to dismiss
Plaintiffs' class action allegations with regard to their seeking
to pursue a class action for violations of the FDCPA.  To the
extent that Defendant Udren additionally seeks the dismissal of
the class claims on the basis that Plaintiffs' allegations do not
prove the Fed. R. Civ. P. 23 factors, the Court finds that such
an argument is not ripe for decision on a Rule 12(b)(6) motion to

dismiss, as Plaintiffs have not yet had the opportunity to conduct class discovery with regard to their FDCPA claim.

## IV.   CONCLUSION

Plaintiffs have raised several claims for relief in the present action.  The Court finds that Plaintiffs have sufficiently stated a claim under the FDCPA, and that their claim is not subject to dismissal under the New Jersey Entire Controversy Doctrine or the <u>Colorado River</u> abstention doctrine.

Because the Court finds that Plaintiffs have not alleged damages or any ascertainable loss, the Court will grant Defendants' motions to dismiss Counts I - VI of the Complaint. Additionally, because the Court finds that Plaintiffs have not sufficiently alleged the required elements for recovery under the TCCWNA or the UCC, the Court will similarly dismiss Counts VII and VIII without prejudice.

However, because the Court finds that Plaintiffs have sufficiently alleged the existence of an agency relationship between Defendants U.S. Bank and Udren, and because the Court finds that the September 10, 2009 letters sent to Plaintiffs by Udren on behalf of U.S. Bank could be considered misleading under the least-sophisticated debtor standard applied in this Circuit, the Court will deny Defendants' motion to dismiss Count IX of the Complaint.

The accompanying Order will be entered.


**August 18, 2011**                         **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge